**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SPOONER PETROLEUM COMPANY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION 15-0237-WS-B** |
| | ) | |
| **JOHN J. UTSEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendants' Motion to Dismiss (doc. 23) pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.  The Motion has been briefed and is now ripe for disposition on an expedited basis.

**I.      Relevant Background.**

Plaintiff, Spooner Petroleum Company, brought this action in this District Court against defendants, John J. Utsey, Julie W. Utsey, John Jefferson Utsey Investments, LLC, and Treobye B. Utsey, as Trustee of the William L. Utsey Grandchildren's Trust.  Well-pleaded factual allegations in the Complaint reflect that Spooner is preparing to conduct a "geophysical 3D seismic survey" exploring for prospective oil and gas properties in a 65 square-mile area near the City of Butler in Choctaw County, Alabama (the "Butler Survey").  (Doc. 1, ¶ 13.)  The Complaint further alleges that "Spooner and its partners have spent approximately $2.2 million in leases, permits and other project costs in preparation for the survey," including obtaining permits from more than 600 individual surface owners.  (*Id.*, ¶ 14.)

According to the Complaint, a major obstacle to Spooner's ability to move forward with the Butler Survey is that defendants own 21 tracts of real property (the "Utsey Tracts") located near the geographical center of the Butler Survey.  (*Id.*, ¶¶ 12, 15.)  Spooner alleges that it has obtained mineral permits and/or leases executed by mineral rights owners for each of those parcels, and that such permits and leases confer upon it a right to acess the surface of the Utsey

Tracts to conduct the Butler Survey, but that defendants have nonetheless refused to allow Spooner onto those tracts.  (*Id.*, ¶¶ 16-19.)  Spooner alleges that this state of affairs places it in a bind because (i) the mineral permits and oil/gas/mineral leases it has obtained at great expense to conduct the Butler Survey have a limited shelf life, with expiration dates looming "soon," and (ii) because of "the central location and large size" of the Utsey Tracts, seismic data from those tracts "is essential to providing a complete and accurate seismic survey of the area."  (*Id.*, ¶¶ 15, 24.)

This brings us to the relief sought by Spooner.  In Count One of the Complaint, Spooner requests a preliminary and permanent injunction compelling defendants to "immediately allow Spooner and/or its surveying contractors access to the [Utsey Tracts] for the purpose of conducting its seismic surveying work and further preventing the Defendants and said other individuals from interfering, in any way, with the surveying work."  (*Id.* at 9.)  In Count Two, Spooner seeks a declaratory judgment that it is entitled to access the Utsey Tracts to perform the Butler Survey.  (*Id.*)  And in Count Three, Spooner claims damages pursuant to the following allegations:  "The Butler Survey must be accomplished now.  Without access to the [Utsey Tracts], Spooner is incurring and will continue to incur damages.  Permit crews and survey crews cannot commence their work without access to the Subject Property."  (*Id.*, ¶ 32.)

On May 7, 2015, one day after filing the Complaint, Spooner filed a Motion for Preliminary Injunction (doc. 4) and supporting Brief (doc. 5).  In those filings, Spooner reiterated that it has spent more $2.2 million on the Butler Survey to date, that Spooner holds valid mineral permits and/or oil and gas leases covering each of the Utsey Tracts, that defendants have nonetheless refused to allow Spooner access to the Utsey Tracts, and that Spooner will be irreparably harmed if defendants continue to bar it from accessing the Utsey Tracts because those permits and leases will expire in the near future.  The Court entered an expedited briefing schedule on the Motion for Preliminary Injunction.  (*See* doc. 9.)  On May 22, 2015, the final day of that briefing period, defendants filed their Motion to Dismiss (doc. 23), challenging the existence of federal jurisdiction and particularly focusing on the requisite amount in controversy. (The Motion to Dismiss also asserts that the Complaint fails to state a claim for damages.) Briefing on the Motion for Preliminary Injunction was suspended until such time as the jurisdictional issue can be resolved.  (*See* doc. 26.)

## II.    Analysis.

### A.    *The Amount-in-Controversy Requirement.*

#### 1.    *Legal Standard.*

The Complaint predicated federal subject matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332.  (Doc. 1, ¶ 9.)  Pursuant to that statute, federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted).  "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

The focal point of defendants' jurisdictional attack is the amount-in-controversy prong of § 1332.  To be sure, the Complaint alleges that "[t]he amount in controversy exceeds $75,000." (Doc. 1, ¶ 9.)  The Eleventh Circuit has observed that "[a] plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith."  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *see also Wellington v. Royal Caribbean Cruises, Ltd.*, 511 Fed.Appx. 974, 977 (11th Cir. Mar. 8, 2013) (similar).  Here, however, Spooner does not identify a specific sum of damages, and its allegations concerning the amount in controversy relate to the value of its claims for declaratory and injunctive relief.  For § 1332 jurisdiction to lie in that context, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  *McKinnon Motors*, 329 F.3d at 807; *see also SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp.2d 1245, 1248 (S.D. Ala. 2010) ("This preponderance-of-the-evidence standard applies to declaratory judgment actions brought in federal court….  This makes sense, given that a declaratory judgment plaintiff does not seek damages at all and thus does not seek a determinate amount of damages.").  Thus, the critical question underlying the jurisdictional challenge is whether Spooner has shown by a

preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs.

Where, as here, a plaintiff's claims sound in declaratory or injunctive relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *McKinnon Motors*, 329 F.3d at 807 (citation omitted).[1] "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted, … or, conversely, the losses that will follow from not obtaining the injunction." *Mixon v. Nationstar Mortg., LLC*, --- F. Supp.3d ----, 2014 WL 6773933, *1 (S.D. Ala. Dec. 2, 2014) (citations and internal quotation marks omitted).

2.      *The Value of the Declaratory/Injunctive Relief Sought.*

Spooner's argument for satisfying the amount-in-controversy requirement is straightforward.  Specifically, plaintiff alleges (and presents evidence) that, as of April 2015, it had expended more than $2.2 million on preparations for the Butler Survey, inclusive of oil and gas leases, surface and mineral permits, and overhead costs.  (McElroy Second Supp. Aff. (doc. 28, Exh. 1), ¶ 4.)[2]  Notwithstanding these out-of-pocket expenses, Spooner's evidence shows that the Butler Survey cannot go forward without access to the Utsey Tracts.  In particular, Spooner's Land Manager, Bob McElroy, avers that the Utsey Tracts are "crucial to the Butler Survey;" that without access to same, Spooner "will be required to terminate[] all, or much of, the Butler Survey;" and that Spooner suspended all work on the Butler Survey on May 1, 2015 precisely because of defendants' denial of access.  (*Id.*, ¶ 5.)  As McElroy explains, "It is the significant

---

[1]      *See also South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014) ("We have held that for amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective.") (citation and internal marks omitted); *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216, 218 (11th Cir. 1997) ("Because EGE sought only declaratory and injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (citations and internal quotation marks omitted).

[2]      Plaintiff itemizes these out-of-pocket expenditures as follows: (i) $544,279 paid to mineral owners and to third parties to examine title and purchase oil and gas leases; (ii) $1,148,396 paid for surface permits, mineral permits, and landmen and agents involved in the title-checking and acquisition of same; and (iii) $565,611 for geological/geophysical/land studies for the Butler Survey, as well as other associated research and overhead expenses.  (*Id.*)

size and central location of the Defendants' lands that create this complete block to the Butler Survey." (*Id.*, ¶ 9.)[3]  If the Butler Survey cannot proceed in the near future, Spooner shows, it will lose all or substantially all of its $2.2 million investment in the project, including more than $868,000 in surface permits that will expire between March 2016 and October 2016, as well as more than $439,000 in mineral permits that will expire between April 2016 and October 2016. (McElroy Supp. Aff. (doc. 28, Exh. 3), ¶ 3.)[4]

In a nutshell, then, Spooner's position is that the $75,000 jurisdictional threshold is satisfied by a wide margin because (i) it has invested more than $2.2 million in the Butler Survey; (ii) the Utsey Tracts are so important to the Butler Survey that all or much of the project will have to be scuttled unless this Court grants an injunction allowing Spooner access to same; and (iii) the leases and permits will expire next year, thereby forfeiting Spooner's seven-figure investment unless the Butler Survey has been completed.  Taken in the aggregate, Spooner's

---

[3]       The opinions of Bob McElroy are buttressed by those of Charles Morrison, a consulting geophysicist with 44 years' experience who is working with Spooner on the Butler Survey.  (Morrison Aff. (doc. 28, Exh. 2), ¶ 1.)  Based on his analysis, Morrison opines that, with regard to the Utsey Tracts, "the lack of access dramatically and detrimentally affects the proposed survey" (*id.*, ¶ 5) in a technical manner that he explains, including his conclusion that such lack of access "destroys imaging over at least 50% of the perceived prospective areas" (*id.*). According to Morrison, "if Spooner is unable to access the Utsey tracts, I would recommend a complete abandonment of the entire program or at least the N½ of same."  (*Id.*)

[4]       Defendants note that they "would welcome an opportunity to take depositions to show that data from the Utseys' parcels is not 'essential'" to the Butler Survey.  (Doc. 30, at 7.) The Court declines to allow such an opportunity antecedent to ruling on the Rule 12(b)(1) Motion for several reasons.  First, defendants offer nothing to counter the unambiguous, detailed affidavits of McElroy and Morrison other than a vague "we-don't-believe-you" protestation. They do, not for example, offer any geophysicist testimony to rebut Morrison's specific showing of the centrality of the Utsey Tracts to Spooner's ability to proceed with the Butler Survey in a meaningful fashion.  As postured, then, defendants' request for jurisdictional discovery appears tantamount to a mere fishing expedition.  Second, nothing in this Order is or should be construed as a final ruling on the merits.  Defendants will have a full and fair opportunity to conduct discovery on all merits issues as the case progresses.  Third, recall that Spooner has filed a Motion for Preliminary Injunction and claims to be suffering irreparable harm by virtue of the Utseys' blockage of access to the Utsey Tracts.  Judicial consideration of that P.I. Motion has been necessarily delayed pending defendants' jurisdictional challenge.  Allowing the requested depositions here would further stall the Motion for Preliminary Injunction, perhaps beyond a point where injunctive relief would or could be effective.  For all of these reasons, the jurisdictional discovery to which defendants allude is not appropriate.

evidence and argument demonstrate that the value of the injunctive relief claimed in this action is the full $2.2 million invested in the Butler Survey, because Spooner stands to lose the full amount of that investment unless an injunction is granted. This is a compelling, detailed showing that, on its face, satisfies Spooner's burden of demonstrating jurisdiction by a preponderance of the evidence.

> ### 3.   *Defendants' Counterarguments.*

Nonetheless, defendants fire back with a host of counterarguments.[5]  Three warrant examination in the context of the pending Rule 12(b)(1) Motion.

First, defendants rely on a pre-litigation settlement offer from Spooner as proof that the amount in controversy is far below the $75,000 benchmark. In particular, defendants' evidence is that Spooner's agents (or "land men") contacted defendant John J. Utsey in November 2014 and again in March 2015 with a settlement proposal, and that on each occasion Spooner offered a payment of $10 per acre, or the collective sum of $28,895, for access to the Utsey Tracts during the Butler Survey. (Utsey Aff. (doc. 24, Exh. A), ¶¶ 5-7.)  "Offers of settlement or demand letters are relevant and may be considered in evaluating the § 1332 amount in controversy ...; however, their utility varies widely depending on the circumstances."  *Montgomery v. Food Giant Supermarkets, Inc.*, 2014 WL 5307890, *2 (S.D. Ala. Oct. 16, 2014); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("While this settlement offer, by itself,

---

[5]      Many of those contentions appear to be a premature attempt to debate the merits of the case, which is not appropriate at the Rule 12(b)(1) stage. The Court well understands and appreciates defendants' position that Spooner is not legally entitled to access the Utsey Tracts for purposes of the Butler Survey, that Spooner has "zero right" to access four of the 21 parcels at issue, that Spooner lacks required leases or permits for some or all of those tracts, and that Spooner is attempting to force defendants to convey certain legal interests in property to it. There will come a time to explore and address these merits issues; however, that time is not a Rule 12(b)(1) jurisdictional challenge filed at the outset of the lawsuit while a time-sensitive Motion for Preliminary Injunction is in play. Moreover, defendants' insistence that "Spooner will unquestionably never obtain 100% surface access to all the acreage in issue" (doc. 24, at 10) and that Spooner is demanding "surface access to every single surface acre at issue" (*id.* at 11) unhelpfully exaggerates plaintiff's position. Plaintiff has never maintained that it requires access to ever acre of land within the Butler Survey area in order to perform its work; instead, it has argued and shown only that the Butler Survey cannot proceed where, as here, Spooner has been categorically denied access to the entirety of the large, interlocking, centrally located blocks of land comprising the Utsey Tracts. That is a very different theory than defendants' formulation would suggest.

may not be determinative, it counts for something."). Citing this line of authorities, defendants conclude that "[i]n the face of its pre-suit settlement offer to all Defendants *collectively* of $28,895 for surface access to all 21 parcels and 2,589.50 aces, any attempt now to claim that more than $75,000 is at issue as to *each* of the seven Defendants is implausible on its face." (Doc. 24, at 20.)

Defendants' argument is unpersuasive because it compares apples to oranges. The $10/acre payment that Spooner's agents offered the Utseys was an attempt to "buy peace" from what it perceived to be obstructionist surface owners who were preventing Spooner from exercising its claimed rights under previously acquired mineral permits. (McElroy Second Supp. Aff., ¶ 3.) That offer cannot logically be equated to the value to Spooner of the injunctive relief it seeks in this litigation. The "buy peace" payment offer was in an amount calculated (from plaintiff's standpoint) to mollify a recalcitrant surface owner. It had no logical bearing on or relationship to the financial consequences to Spooner of exclusion of access to the Utsey Tracts. By contrast, Spooner's evidence is that, without an injunction, the entire Butler Survey will fail and its entire multi-million dollar investment will go down the drain. Stated differently, plaintiff has shown that, from its perspective, the fate of the Butler Survey is hanging in the balance. As such, the proper valuation of the injunctive relief it seeks from defendants is the amount Spooner stands to lose if the project fails (which, according to plaintiff's evidence, it will if no injunction is entered). Spooner's token offer of payment to John J. Utsey to persuade his family to allow Spooner to exercise its alleged rights under pre-existing permits bears no meaningful nexus to the value (from Spooner's perspective) of the injunctive relief sought. In short, the Court concludes that, in the specific circumstances and context of this case, the settlement offers on which defendants rely are of negligible utility in fixing the amount in controversy for § 1332 purposes.[6]

---

[6]     Equally unavailing is defendants' assertion that subject matter jurisdiction is lacking because Spooner "makes no showing why the Utseys should have to bear the burden of being haled into federal court with jurisdiction being based on the entire value of the whole project rather than on the value of access to their land." (Doc. 30, at 7.) Spooner has indeed made that showing. Indeed, Spooner's evidence demonstrates that the benefit to plaintiff of the requested injunction is not simply the ability to access the Utsey Tracts (as to which the $28,895 settlement offer may be a reasonable indicator of valuation), but is rather the ability to proceed with the Butler Survey altogether. Again, "the amount in controversy is the monetary value of (Continued)

Second, defendants assert that Spooner has failed to establish the amount in controversy because it improperly aggregates claims across seven defendants.  As a general proposition, it is correct that "a plaintiff may not aggregate claims against multiple defendants to satisfy a minimum amount in controversy."  *Indiana Lumbermens Mut. Ins. Co. v. Lumber One Wood Preserving, LLC*, --- F. Supp.3d ----, 2014 WL 4681773, *2 (N.D. Ala. Sept. 16, 2014).[7]  The Court harbors significant reservations about whether that general rule applies here, simply because Spooner does not appear to have asserted "separate and distinct" claims against each defendant.  The defendants – John J. Utsey, Julie W. Utsey, John Jefferson Utsey Investments, LLC, and Treobye B. Utsey, as Trustee of the William L. Utsey Grandchildren's Trust – are all related individuals and entities alleged to have acted in a singular, concerted manner (by and through John J. Utsey) to deny Spooner access to the Utsey Tracts.  In making such refusals, defendant John J. Utsey appears to have acted as the sole spokesperson and agent for all defendants.[8]  By all appearances, defendants acted as a unified collective in rebuffing Spooner's attempts to access the Utsey Tracts.  Thus, it is not at all clear that the disaggregation rule properly applies.  Certainly, defendants have made no attempt to show that the claims against each of them should be viewed as "separate and distinct" for purposes of this rule.

---

the object of the litigation from the plaintiff's perspective."  *McKinnon Motors*, 329 F.3d at 807. Plaintiff shows that the entire project hinges on its ability to access the Utsey Tracts, and that it stands to lose most or all of its $2.2 million investment unless an injunction is granted.  Under these circumstances, "the object of the litigation" is not simply the ability to access the Utsey Tracts, but rather the ability to proceed with the Butler Survey at all.  As such, federal jurisdiction is properly based on the value of the project rather than the cost, in isolation, of accessing the Utsey Tracts themselves.

[7]     *See also Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961) ("The general rule with respect to the aggregation of the claims of a plaintiff against two or more defendants is that where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate."); *Jackson v. St. Jude Medical Neuromodulation Div.*, 2014 WL 4693237, *4 (M.D. Fla. Sept. 22, 2014) ("Simply put, where a plaintiff names multiple defendants in a single action and asserts separate and distinct claims against each defendant, the amount in controversy must exceed $75,000 for each claim.").

[8]     Indeed, plaintiff's evidence is that John J. Utsey expressly informed Spooner's agent, Bob McElroy, "that he speaks for all these groups so he is the common denominator in the access refusal."  (McElroy Second Supp. Aff., ¶ 8.)

Even assuming that the general prohibition on aggregation of claims does apply here, defendants' jurisdictional challenge would nonetheless fail.  To demonstrate the point, plaintiff has separated the Utsey Tracts into three groups, to-wit: (i) parcels owned jointly by defendants John J. Utsey and Julie Utsey; (ii) parcels owned by defendant John Jefferson Utsey Investments, LLC; and (iii) parcels owned by the William L. Utsey Grandchildren's Trust (the trustee of which is also a defendant).  Plaintiff's evidence is that each group of tracts (*i.e.*, the set of parcels in the Butler Survey area whose surface rights are owned by each defendant individually or jointly with other defendants) is sufficient "to completely stop the Butler Survey or create severe gaps in the data collection which could result in information that is not reliable to use." (McElroy Second Supp. Aff., ¶ 8.)[9]  These facts demonstrate that the value to Spooner of the injunctive relief sought as to each defendant exceeds the sum of $75,000, even without aggregation, because each defendant owns or controls sufficient parcels to derail the Butler Survey in the absence of injunctive relief.  Accordingly, after careful examination of the parties' submissions, the Court concludes that Spooner has shown by a preponderance of the evidence that the § 1332 jurisdictional threshold is satisfied as to each defendant.  Defendants' objection that Spooner has improperly aggregated the amount in controversy across multiple defendants lacks factual or legal support.

Third and finally, defendants take issue with Spooner's allegation that it has spent more than $2.2 million on the Butler Survey.  Specifically, defendants posit that "no money has been paid to landowners granting Spooner permission to conduct its seismic surveys" and that "Spooner has not yet paid over any money for such permits."  (Doc. 24, at 5.)  Considerable record evidence is to the contrary; indeed, plaintiff has itemized out-of-pocket expenses of $2,258,269 on the Butler Survey, and presented evidence that "Spooner did pay for each surface permit at the time [it was] acquired."  (McElroy Second Supp. Aff., ¶¶ 3, 4.)  Defendants offer

---

[9]      This evidence is corroborated by the opinions of Charles Morrison (the consulting geophysicist working for Spooner on the Butler Survey) that (i) omitting from the Butler Survey either the group of parcels owned by John and Julie Utsey or the group of parcels owned by the defendant LLC would "completely destroy the viability of this program," and (ii) omitting from the Butler Survey the group of parcels owned by the Trust "would also cause a severe detrimental effect on the data" and compromise the integrity of the Butler Survey.  (Morrison Aff., ¶ 6.)

no meaningful rebuttal, just their *ipse dixit* that this evidence is false.[10]  Plaintiff has satisfied its burden of showing by a preponderance of the evidence that it in fact expended those funds on the Butler Survey; therefore, defendants' efforts to discredit Spooner's evidence that it stands to lose more than $75,000 unless it obtains injunctive relief are unavailing.

> **B.     Rule 12(b)(6) Challenge to Count Three.**

In the alternative, defendants contend that Count Three (the damages claim) of the Complaint fails to state a claim upon which relief may granted, and that it should therefore be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P.

Defendants invoke the *Twombly* standard, which provides that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim."  *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require [ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level."  *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

---

[10]     Defendants' sole showing on this point is an unexecuted Seismic Permit Request containing preprinted language that Spooner agreed to pay $10 per acre "[i]n the event we conduct our operations across your property," and that "payment will not be due" if the seismic work is canceled.  (Doc. 24, Exh. A-3.)  Defendants seize on this language to argue that no money changed hands in the permitting process.  The trouble is that Spooner has attached to its Complaint numerous examples of executed Seismic Permit Requests and leases that do not contain the quoted language.  (*See* doc. 1, at Exh. B.)  Defendants also overlook the numerous other documented out-of-pocket expenses incurred by Spooner, aside from permits themselves.

rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

Defendants' position is that Count Three lacks plausibility because "Spooner's Complaint fails to allege any *wrongdoing* by any Defendant." (Doc. 24, at 15.)  Such a reading of the Complaint is unreasonable.  On its face, the Complaint alleges that "Spooner owns rights to perform seismic surveying under each tract within the Subject Property," meaning the Utsey Tracts.  (Doc. 1, ¶ 16.)  On its face, the Complaint further alleges that, as a matter of Alabama law, Spooner "has the right to reasonably use the surface of the Subject Property to conduct its seismic survey."  (*Id.*, ¶ 17.)  On its face, the Complaint alleges that defendants have repeatedly refused to allow Spooner access to the Utsey Tracts and have indicated that "Spooner would not be permitted access under any circumstances."  (*Id.*, ¶ 19.)  And on its face, the Complaint alleges that Spooner's crews "cannot commence their work without access to the Subject Property."  (*Id.*, ¶ 32.)  Contrary to defendants' characterization, these and other allegations in the Complaint clearly set forth a plausible claim of wrongdoing by defendants in interfering with Spooner's valid property rights in the subject parcels.[11]  Plaintiff's Complaint satisfies *Twombly* because it states a plausible claim of wrongdoing by defendants, resulting in damages.

## III.   Conclusion.

For all of the foregoing reasons, defendants' Motion to Dismiss (doc. 23) is **denied** in its entirety.  Defendants are **ordered** to file a response to the pending Motion for Preliminary Injunction (doc. 4) by no later than **June 18, 2015**.  Defendants' answer to the Complaint must be filed on or before **June 25, 2015**.

DONE and ORDERED this 11th day of June, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11]    The Court understands, of course, that defendants deny having engaged in any wrongdoing; that defendants deny Spooner's claims of a legal right to access the subject parcels; and that defendants maintain they merely rejected an offer by Spooner (as was their right) to purchase certain access rights to their lands.  A Rule 12(b)(6) motion is not the time to hash out competing views of the merits of the case; rather, the Court's sole inquiry is whether the Complaint as filed states a plausible claim for relief.  That question is readily answered in the affirmative here.